IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-01982-CMA-MJW

JERRY LEWIS DEDRICK,

Petitioner,

v.

J. M. WILNER, Warden,

Respondent.

---

## RECOMMENDATIONS ON
## APPLICATION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241
## (Docket No. 8)
## and
## PETITIONER'S MOTION FOR SUMMARY JUDGMENT (Docket No. 30)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This matter is before this court pursuant to an Order Referring Case issued

on October 9, 2009, by District Judge Christine M. Arguello.  (Docket No. 19).

Petitioner, Jerry Lewis Dedrick, is a federal prisoner who is incarcerated at

USP Florence in Colorado.  Before the court for a report and recommendation is

the petitioner's Amended Application for a Writ of Habeas Corpus Pursuant to 28

U.S.C. § 2241 (hereinafter "the petition") (Docket No. 8) and his motion for

summary judgment filed on April 14, 2010 (Docket No. 30).  Respondent filed a

Preliminary Response to Application for Writ of Habeas Corpus (Docket No. 14),

and petitioner filed a Reply thereto (Docket No. 16).  In addition, respondent filed a

Response to Order to Show Cause (Docket No. 21) to show cause why the court should deny the petition. Petitioner filed a "Response + Reply to Respondent's Response to Order to Show Cause." (Docket No. 25).

The court has considered all of these filings as well as applicable Federal Rules of Civil Procedure, statutes, and case law and has taken judicial notice of the court's file. The court now being fully informed makes the following findings, conclusions of law, and recommendations. Because the petitioner is proceeding without counsel, the court has "construe[d] his pleadings liberally, but [has not] act[ed] as his advocate." Ford v. Pryor, 552 F.3d 1174, 1178 (10th Cir. 2008).

Petitioner asserts the following in his petition. He challenges the duration of his confinement on the ground that he has been unconstitutionally deprived of good-conduct-time credits because his due process rights were violated at a prison disciplinary hearing while at the FCI Complex-Medium in Beaumont, Texas. Petitioner received an incident report on June 5, 2008, for fighting. He was denied his right to call all witnesses (namely, Lt. Chapman, Mrs. J. Cline, and Mr. Fazekas) by the disciplinary hearing officer (hereinafter "DHO"), Larry Weston, when the witnesses were available. The DHO used witness statements instead of allowing the witnesses to be present. The DHO falsified the summary report and "sabotaged" the investigation conducted by Lt. Ruso of staff involvement in the incident. Lt. Ruso

> conducted the investigation into the matter that staff knew petitioners [sic] would be assaulted by inmate Parks. If Petitioner moved into the cell with inmate Parks because inmate Parks made 'terroristic threats' to Petitioner Dedrick if he moved into inmate Parks cell in which staff failed to take action to alleviate the matter. All to no avail, no investigation was conducted by Lt. Ruso in which Petitioner signed a sworn affidavit of staff involvement investigation never was concluded or conducted constitutes

> due process violation.  Mr. Weston 'lied' and said that the investigation
> was unfounded when there never was an investigation.  DHO Officer Mr.
> Weston acted as the DHO Officer and the investigation officer which
> violated Petitioner's due process in said DHO Proceedings.  Mr. Weston
> disregarded Petitioner's rights.

(Docket No. 802 at 3).  In addition, the DHO refused to produce the surveillance tape at

the disciplinary hearing on February 4, 2009, and his hearing decision was based only

on the written statement by the correctional officer.  Petitioner lost 27 days of good-

conduct-time credits and lost all privileges, namely, commissary, visiting, and phone, for

180 days.  Petitioner asks that the incident report be expunged from his record and that

his 27 days of good-conduct-time credits be restored.

"It is well settled 'that an inmate's liberty interest in his earned good time credits

cannot be denied "without the minimal safeguards afforded by the Due Process Clause

of the Fourteenth Amendment."'" Mitchell v. Maynard, 80 F.3d 1433, 1444 (10th Cir.

1996) (quoting Ponte v. Real, 471 U.S. 491, 495 (1985); Taylor v. Wallace, 931 F.2d

698, 700 (10th Cir. 1991)).  The Supreme Court, however, held in Wolff v. McDonnell,

418 U.S. 539, 556 (1974), that "[p]rison disciplinary proceedings are not part of a

criminal prosecution, and the full panoply of rights due a defendant in such proceedings

does not apply."  Under Wolff, in order to meet the standards of due process in a prison

disciplinary proceeding,

> the inmate must receive: (1) advance written notice of the disciplinary
> charges; (2) an opportunity, when consistent with institutional safety and
> correctional goals, to call witnesses and present documentary evidence in
> his defense; and (3) a written statement by the factfinder of the evidence
> relied on and the reasons for the disciplinary action.

Superintendent, Mass. Correctional Inst., Walpole v. Hill, 472 U.S. 445, 454 (1985).

Furthermore, the requirements of procedural due process are met if there is just "some

evidence" to support the decision to revoke good time credits. Id.; Mitchell, 80 F.3d at 1445. "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant conclusion is whether there is **any evidence** that could support the conclusion reached by the disciplinary [hearing officer]." Hill, 472 U.S. at 455-56 (emphasis added).

Although the petitioner here delineates several ways his due process rights were allegedly violated at the disciplinary hearing, this court's review "is limited to whether the three steps mandated by Wolff were followed and whether there was some evidence to support the [DHO's] findings." Mitchell, 80 F.3d at 1445. Based upon these standards, this court finds that the petitioner received the requisite due process of law.

**Advance Written Notice.** First, petitioner was given advance written notice of the disciplinary charge. The Incident Report was served on the petitioner on June 5, 2008, which was six months before the hearing was commenced on January 7, 2009, and postponed for additional information. The hearing reconvened and was concluded on February 4, 2009. (Docket No. 21-6).

On June 5, 2008, which was the day following the incident, Lieutenant D. Chapman provided a copy of the Incident Report to the petitioner. (Docket No. 21-3). In that report, the incident was described as follows:

> On 05/04/08 at 5:02 PM, I officer L. Villarreal observed inmate Gregory Parks Reg #09674-026 in an altercation with inmate Dedrick, Jerry Reg # 27140-180. Inmate Dedrick assaulted inmate Parks by striking him in the face with a closed fist and wrestling with him on the ground. Inmate Dedrick was restrained by staff and escorted to special housing.

(Docket No. 21-3 at 1). The report notes petitioner's comments to the committee regarding the incident as, "I want a surveillance tape" and "I deny the incident report!" (Docket No. 21-3 at 1). In addition, the report notes that the committee was referring the charge to the DHO for further hearing and that the committee advised the petitioner of its findings and of the right to file an appeal. (Docket No. 21-3 at 1).

Under the Investigation portion of the report, it is noted that when the petitioner was given a copy of the report, he made the following statement, "He assaulted me...not guilty!" (Docket No. 21-3 at 2). In addition, it states that petitioner "was afforded the opportunity to identify witnesses decline." (Docket No. 21-3 at 2). Finally, it states that "[o]n 6/5/08 Lieutenant D. Chapman Based on the information provided in section #11 of this report and concluded that this report is warranted as written for Code 201." (Docket No. 21-3 at 2).

That same day, June 5, 2008, the petitioner received and signed a "Notice of Discipline Hearing Before the (DHO)." (Docket No. 21-5). That Notice advised him that he was being charged with a violation of Code No. 201, fighting with another person, and advised him of his right to have a staff member to represent him at the hearing and "to call witnesses at the hearing and to present documentary evidence in your behalf; provided, calling your witnesses will not jeopardize institutional safety." (Docket No. 21-5). It was further noted that the DHO "will call those witnesses (Staff or Inmate) who are reasonably available, and who are determined by the DHO to have information relevant to the charge(s). Repetitive witnesses and repetitive character references need not be called. Unavailable witnesses may be asked to submit written statements." (Docket No. 21-5). Petitioner indicated on the form that he wanted Case Manager Johnson as

his staff representative and wanted to call Counselors Cline and Fazekas as his witnesses. (Docket No. 21-5).

**Witnesses and Documentary Evidence.** As noted above, petitioner requested only two witnesses, counselors Fazekas and Cline. (Docket No. 21-4). There is no indication in the record that the petitioner requested that Lt. Chapman, who served the Incident Report upon the petitioner, be called, nor has the petitioner indicated what he expected to show through testimony by Lt. Chapman.

With regard to the two witnesses plaintiff did request, the DHO reported:

Mr. Fazekas provided a written statement and stated he did not witness the actual fight and that is [sic] was over when he responded to the scene. He also stated Ms. Cline was not at the scene of the fight. Mr. Fazekas also stated that inmate Dedrick was approved to move into the cell with Parks.

. . . Ms. Cline was not called as she was not present during the fight between Dedrick and Parks. Also, Ms. Fazekas already provided that Dedrick had been authorized to move into the cell with Parks. Therefore, Ms. Cline would have no further information beneficial to inmate Dedrick.

(Docket No. 21-6 at 1).

Petitioner's complaint that his witnesses did not present live testimony and that the DHU used witnesses statements instead of allowing them to be present in this case does not rise to the level of a constitutional violation under the circumstances presented here. An inmate has no constitutional right of confrontation and cross-examination at a prison disciplinary hearing. Wolff, 418 U.S. at 567-68. A prisoner's right to call and present witnesses and documentary evidence is "circumscribed by the necessary 'mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.'" Howard v. U.S. Bureau of Prisons,

487 F.3d 808, 812 (10th Cir. 2007) (quoting <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 321 (1976); <u>Wolff</u>, 418 U.S. at 556). "[W]hile prison officials must consider an inmate's request 'to call or confront a particular witness . . . on an individualized basis,' . . . 'errors made by prison officials in denying witness testimony at official hearings are subject to harmless error review' . . . ." <u>Id.</u> at 813 (citations omitted).

Here, it is stated in the hearing report that petitioner sought the testimony of his two requested witness to verify that he was authorized to move into the cell with inmate Parks. (Docket No. 21-6 at 1). The DHO obtained the statement of one of the petitioner's two requested witnesses, counselor Fazekas, who stated that the petitioner was authorized to move into the cell. The DHO apparently accepted that statement as true. Consequently, the DHO did not need additional evidence through testimony from Cline to establish that fact. Petitioner has not demonstrated how live testimony and duplicitous testimony by Cline would have aided his defense. The court finds that any error in excluding live testimony and not calling Cline did not prejudice the petitioner and was harmless. <u>See</u> <u>Diaz v. McGuire</u>, 154 Fed.Appx. 81 (10th Cir. 2005) (witnesses not called due to redundancy, relevancy, and duplication did not deprive inmate of any defense or of due process).

Moreover, as the DHO found, authorization for the petitioner to move into the cell was immaterial to the fighting charge. As the DHO stated, petitioner's "moving into the cell may be the catalyst for the fight between [petitioner] and Parks. However, [petitioner having been] authorized to move into the cell does not alleviate [him] from [his] responsibility to conduct [himself] within BOP rules." (Docket No. 21-6 at 2). Respondent correctly asserts that limiting testimony on an immaterial issue did not

prejudice the petitioner.  See Brown v. Wyoming Dep't of Corrections State Penitentiary Warden, 234 Fed.Appx. 874, 2007 WL 1492344, *4 (10th Cir. May 23, 2007) (provided by the respondent as Docket No. 21-9) ("[A] prisoner cannot maintain a due process claim for failure to permit witness testimony if he fails to show that the testimony 'would have affected the outcome of his case.'") (quoting Chesson v. Jaquez, 986 F.2d 363, 366 (10th Cir. 1993)).  See also Jackson v. Matthews, 1992 WL 363635, *2 (D. Kan. Nov. 18, 1992) (Petitioner requested the testimony of one witness to state that petitioner was threatened, but court found that such testimony, even if found credible by the DHO, would not have provided a defense to the charge of fighting with another inmate.  The court found the testimony was not relevant to the issue of petitioner's guilt and found no error in the absence of that witness).

Petitioner also complains that the DHO refused to produce the surveillance tape at the disciplinary hearing.  A DHO's unjustified refusal to produce and review videotape records may in certain circumstances deprive a prisoner of the process due to him. See Howard, 487 F.3d at 813-15.  In this case, however, the DHO reviewed and considered the videotape requested by the petitioner, albeit outside of the petitioner's presence.  In addition, the videotape was reviewed by the petitioner's staff representative, Mr. Johnson.  (See Docket No. 21-6 at 2).  It appears that petitioner's actual complaint is that he was not personally permitted to review the videotape.  The DHO's refusal to allow the petitioner to review the videotape in this case, however, does not state a claim of constitutional magnitude.  Under Wolff, in order to meet the standards of due process in a prison disciplinary proceeding, a prisoner must be given the opportunity to present documentary evidence in his defense, but only "when

consistent with institutional safety and correctional goals." Hill, 472 U.S. at 454. In this case, the DHO stated in his decision that as he told the petitioner, the petitioner was "not allowed to personally view the recording as it would provide [petitioner] information regarding the views of the security camera, which would threaten institutional security." (Docket No. 21-6 at 2). Under the circumstances, not permitting the petitioner to view the videotape does not constitute a due process violation. See Brown v. Wyoming Dep't of Corrections State Penitentiary Warden, 234 Fed.Appx. 874, 2007 WL 1492344, *3 (10th Cir. May 23, 2007) (provided by the respondent as Docket No. 21-9) (finding no reasonable jurist could conclude that the disciplinary committee violated the inmate's due process rights by forbidding him from viewing a video tape or failing to provide him the names of prisoners present at the incident given a reasonable concern that such information could endanger other prisoners).

**Written Statement of Evidence Relied Upon and Reasons.** The record further shows that the petitioner was provided with a written statement by the DHO of the evidence relied on and the reasons for the disciplinary action, which are quoted below. (See Docket No. 21-6 at 2, "Specific Evidence Relied on to Support Findings (Physical Evidence, observations, written documentation, etc.).").

**Finding is Supported by Some Evidence.** Finally, there is some evidence that could support the conclusion reached by the DHO. Hill, 472 U.S. at 455-56. "The decision can be upheld even if the evidence supporting the decision is 'meager.'" Mitchell, 80 F.3d at 1445 (citing Hill, 472 U.S. at 457). Here, the DHO stated that his finding that the petitioner committed the prohibited act of fighting was supported by the

written account of Officer Villarreal contained in the Incident Report, the video-recording

of the incident, and the petitioner's statements during the DHO hearing.  The DHO

stated:

> I find that you committed the prohibited act of Fighting, Code 201.  My decision is based in part on the written account of Officer Villarreal, who provided that on 06-04-08, he saw you fighting with inmate Parks on the LA Unit stairwell at FCIM Beaumont.  During the altercation you were hitting Parks in the face with a closed fist and you then wrestled him to the floor.  You were restrained by staff.  As reflected by the injury assessment completed by medical staff for inmate Parks, he sustained abrasions and a scratch as a result of this incident.  You sustained various abrasions and scratches.
>
> My decision is also supported by the video recording of the incident.  As I told you, Mr. Johnson, your staff representative and I viewed the video tape of the incident.  You were not allowed to personally view the recording as it would provide you information regarding the view of the security camera, which would threaten institution security.  However, both Mr. Johnson and I saw you in the video fighting with inmate Parks.  You were swinging your fists at inmate Parks and you then took Parks to the floor of the stairwell landing.
>
> I also considered your statements to me during the DHO hearing.  Specifically, you stated you were authorized by staff to move into inmate Parks' cell.  You also stated that Parks assaulted you as he did not want you moving into the cell.  You claimed that you never hit Parks.  Mr. Fazekas verified in writing your claim that you were authorized to move into the cell.  Mr. Fazekas also indicated he did not see the fight as it was over when he responded.  However, I find not credible your claim that you did not hit Parks.  Officer Villarreal specifically provided that you were hitting Parks with your fists then taking him to the ground.  The video recording of this incident, viewed by both me and your staff rep., clearly shows you swinging your fists at Parks and then talking him to the floor.  The video supports Officer Villarreal's account of the incident.  Your moving into the cell may be the catalyst for the fight between you and Parks.  However, your being authorized to move into the cell does not alleviate you from your responsibility to conduct yourself within BOP rules.
>
> Based on the above, I find the greater weight of the evidence supports you committed the prohibited act stated above.

(Docket No. 21-6 at 2).

The court finds that the DHO's decision is supported by "some" evidence, if not substantial evidence, namely, an eye-witness account by Officer Villarreal who stated he saw petitioner hit the other inmate with a closed fist and wrestle him to the ground, the videotape recording of the incident which was reviewed by the DHO and the petitioner's staff representative, and the injury assessments of both the petitioner and the other inmate.

Petitioner seems to assert that the hearing decision is in error because he was assaulted by inmate Parks, and Parks was the aggressor.  "The Federal Constitution [however] does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board.  Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." Hill, 472 U.S. at 457.  Here, petitioner argued that Parks was the aggressor, but the DHO's nevertheless determined that the petitioner committed the disciplinary violation of fighting.  This court finds that the DHO's decision was not so lacking in evidentiary support so as violate due process.  See Collins v. Furlong, 3 Fed.Appx 886 (10th Cir. Feb. 8, 2001) (On the basis of the petitioner's allegation that he sought to defend himself against another inmate and attempted to hold him, it was not an abuse of discretion for the district court to find that there was some evidence of fighting.  Inmate argued that uncontradicted evidence established that he was acting in self-defense, but the hearing officer was entitled to disbelieve all of the evidence showing inmate was acting in self-defense).

**Sabotage of the Investigation.**  It appears that petitioner also asserts that his due process rights were violated because the DHO somehow sabotaged the

investigation because he did not ensure that Lt. Ruso investigated threats purportedly made by inmate Parks. As asserted by the respondent, however, this claim does not assert a due process violation because the disciplinary hearing at issue was about fighting by the petitioner, not threats purportedly made by inmate Parks. The DHO was a hearing officer, not an investigator. Petitioner was given an opportunity to call witnesses, and he did not list Lt. Ruso as a witness. Furthermore, there is nothing in the record that suggests that the petitioner told the DHO that he wished to prove that Parks had threatened him. Instead, as noted by the respondent, it appears the petitioner claimed by way of defense that he never hit Parks, that Parks assaulted him because he did not want him in his cell, and that the petitioner was authorized to move into the cell. There is no basis for habeas relief based on this purported sabotage by the DHO.

**Equal Protection Claim.** Petitioner makes a very conclusory claim in his petition that he has been "deprived of . . . equal protection of the law . . . at prison disciplinary proceedings." (Docket No. 8-1 at 2). To prevail on an equal protection claim, he must show that the government has treated him differently than others who are similarly situated. See Penrod v. Zavaras, 94 F.3d 1399, 1406 (10th Cir. 1996). Petitioner has made no such showing here, and habeas relief is not warranted on such claim.

**Eighth Amendment Claim.** In his "Response-Reply" (Docket No. 25), petitioner asserts that "his Eighth Amendment rights were violated due to staff failure to protect when they was warn [sic] despite applicant's grievances of the terroristic threats Parks

made. . . . Failure to investigate the assault constitutes deliberate indifference and due process violations." (Docket No. 25 at 2). Petitioner, however, did not raise an Eighth Amendment claim in his petition, and thus such claim is not before this court. Furthermore, even if such allegation rose to the level of an Eighth Amendment violation, a petition for a writ of habeas corpus is not an appropriate avenue to remedy claims regarding conditions of confinement. See Muhammad v. Wiley, 330 Fed.Appx. 165, 167 (10th Cir. May 20, 2009) (citing Rael v. Williams, 223 F.3d 1153, 1154 (10th Cir. 2000)).

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the petitioner's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 **(Docket No. 8)** be **denied and dismissed**. It is further

**RECOMMENDED** that the petitioner's Motion for Summary Judgment **(Docket No. 30)** be **denied**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53**

**(1985), and also waives appellate review of both factual and legal questions.**

**Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley**

**v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**


Date:  April 28, 2010                  s/ Michael J. Watanabe
       Denver, Colorado           United States Magistrate Judge